In re W. Ferrel McGINNIS, Debtor.

Susan J. McGinnis, Debtor.

Nos. 00–50108–JWV, 00–50109–JWV.

United States Bankruptcy Court,
W.D. Missouri.

Feb. 13, 2004.

exemptions of W. Farrell McGinnis and Susan Joann McGinnis ("Debtors"). Bruce Strauss, the Trustee ("Trustee"), asserts that the Debtors are not entitled to claim Kansas's unlimited homestead exemption because the Debtors did not own any real estate in Kansas when an involuntary petition was filed against the Debtors. In the alternative, the Trustee argues that the Debtors' Kansas homestead exemption should be denied based on fraudulent activity. The Court held a hearing in this matter on November 21, 2003, in Kansas City, Missouri. At that time, the Court took the matter under advisement and allowed supplemental briefing. After considering the arguments of the parties and the relevant case law, the Court is prepared to rule that the Debtors had a sufficient interest in their Kansas home before the date of their involuntary petition to exempt that interest from attachment under Kansas law, and that the Trustee has failed to demonstrate an exception to the Debtors' homestead exemption under Kansas law.

Robert Todd Wilhelmus, Mission, KS, Susan J. McGinnis, pro se, W. Farrell McGinnis, pro se, Overland Park, KS, for Debtors.

Bruce E. Strauss, Merrick Baker Strauss, pro se, Kansas City, MO, for Trustee.

## MEMORANDUM OPINION

JERRY W. VENTERS, Chief Judge.

This matter comes before the Court on the Chapter 7 Trustee's objection to the

## I. BACKGROUND

The parties submitted this matter to the Court on stipulated facts, which can be summarized in pertinent part as follows:

The Debtors lived in Gallatin, Missouri, from August 1998 to October 31, 1999. On November 1, 1999, the Debtors moved to Kansas and took up residence in a rental townhome located on 84th Street in Lenexa, Kansas. The Debtors did not intend to move back to Missouri; rather, they intended to remain in Kansas indefinitely.[1]

---

**1.** On December 15, 1999, Ms. McGinnis obtained a Kansas driver's license listing her address as 88th Street in Lenexa, Kansas. At that time the Debtors believed that they were going to purchase a residence at that location, but that sale was never completed. Mr. McGinnis stated that he chose to wait until his Missouri driver's license expired before obtaining a new one in Kansas.

Meanwhile, the Debtors had their Gallatin, Missouri, mail forwarded to their Missouri attorney's address, and that attorney took part in litigation on the Debtors' behalf in December 1999 and represented that the Debtors were residents of Missouri.

On December 31, 1999, the Debtors sold their Gallatin, Missouri, home, but did not place the proceeds of that sale in a bank account. Between February 1 and 11, 2000, the Debtors agreed to purchase a home in Overland Park, Kansas, and did so by contemporaneously tendering $88,000.00 to the seller in a paper bag. Approximately $60,000.00 of that money constituted proceeds from the sale of the Debtor's Missouri property, and the remainder of the cash was generated from the sale of personal property. By February 19, 2000, the Debtors began residing in their Overland Park home and on March 9, 2000 a warranty deed was recorded, bearing a date of March 3, 2000. On February 23, 2000, an involuntary bankruptcy petition was filed against the Debtors in the Western District of Missouri. According to the Debtors' Summary of Schedules, they listed sixteen pages of creditors to whom they owed approximately $1,805,-352.37—much of which was related to Mr. McGinnis's failed electrical business. The Debtors have no comparable assets,[2] and their current income consists only of Social Security disability payments.[3] On June 22, 2000, the Debtors filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the District of Kansas. On November 17, 2000, this Court entered an Order for Relief in the involuntary proceeding.[4]

## II. DISCUSSION

The gravamen of this matter concerns whether the Debtors had a sufficient interest in their Kansas home when the involuntary bankruptcy proceedings were commenced to properly claim an unlimit-

To further support their contention that they intended to become residents of Kansas on November 1, 1999, the Debtors made the following assertions: 1) they moved from Missouri to Johnson County, Kansas, to take advantage of the close proximity of a VA Medical Hospital to treat Mr. McGinnis's medical problems; 2) their children have special education needs for which the public school system in Johnson County, Kansas, is especially well qualified to handle; 3) they began looking for places to live in Kansas as early as August 1999 and signed a contract with a realtor to sell their home in Missouri in September 1999; 4) they had a contract to purchase a Kansas residence on November 19, 1999, but that deal fell through because of financing concerns; 5) they did not desire to stay in their former locality because the nearby VA Hospital allegedly thrice misdiagnosed Mr. McGinnis's congestive heart failure as pneumonia; and 6) the Debtors alleged that they researched other metropolitan areas around the country, but no other area offered the amenities that the Debtors thought were necessary to support their individualized needs.

2. The Debtors' assets consisted of mostly personal property from Mr. McGinnis's electrical business, having an estimated value of $847,964.98. Of that amount, $50,000.00 purportedly represented the value of the Debtors' Overland Park home, which they had purchased for $88,000.00 approximately two years before completing the involuntary schedules. Approximately $404,211.98 of the personal property was in the form of accounts receivable, and approximately $310,000.00 consisted of contingent and unliquidated claims.

3. Combined, the McGinnises receive $1,732.00 per month in Social Security disability benefits. Neither of them is employed.

4. The entry of the order for relief was delayed by a contest over whether the creditors were qualified to file the involuntary petition under 11 U.S.C. § 303(b)(1). That dispute was eventually resolved by the Eighth Circuit Court of Appeals. *McGinnis v. Jenkins & Assocs. (In re McGinnis)*, 296 F.3d 730 (8th Cir.2002).

ed homestead exemption under Kansas law, and whether the Debtors' actions in moving from Missouri to Kansas are tantamount to a fraud on their creditors sufficient to deny the Debtors' homestead exemption. To address these issues, the Court will examine: A) the date that the Debtors became Kansas residents, B) whether the Debtors had a sufficient ownership interest in their Kansas home before the involuntary petition was filed so that they could appropriately claim the Kansas homestead exemption, and C) whether the Debtors' actions were tantamount to a fraud on their creditors sufficient to deny the exemption.

## A. Domicile

■ Before addressing substantive issues concerning the Debtors' Kansas exemptions, the Court must first determine whether the Debtors resided in Kansas for a sufficient amount of time to utilize the Kansas exemption statutes. Pursuant to 11 U.S.C. § 522(b)(2)(A), an individual may exempt from property of the estate any property that would be exempt under the state law "that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period." 11 U.S.C. § 522(b)(2)(A). The term "residence" under Kansas law "means the place which is adopted by a person as the person's place of habitation and to which, whenever the person is absent, the person has the intention of returning." Kan. Stat. Ann. § 77–201. "When a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence." § 77–201; *Beard v. Montgomery Ward & Co.*, 215 Kan. 343, 524 P.2d 1159, 1164 (1974) (stating that under Kansas law the term "residence" means "domicile").

Here, the Debtors moved into a rental home on 84th Street in Lenexa, Kansas, on November 1, 1999. They were physically breathing Kansas's air and they ate and slept in Kansas. Additionally, the Debtors allege that they intended to remain in Kansas indefinitely as of November 1, 1999. On the other hand, the Trustee asserts that after the Debtors moved to Kansas, they had their Gallatin, Missouri, mail forwarded to an attorney in St. Joseph, Missouri, *not* to their new residence in Kansas. Additionally, their Missouri attorney filed a lawsuit on their behalf in December 1999 in which he alleged that they were residents of St. Joseph, Missouri. Nevertheless, the preponderance of the evidence before the Court dictates the conclusion that the Debtors became residents of Kansas as of November 1, 1999. When the involuntary petition was filed on February 23, 2000, the Debtors had been domiciled in Kansas for 114 days, which is well more than half of the preceding 180 days. Therefore, under the plain language of 11 U.S.C. § 522(b)(2)(A), they are entitled to utilize the Kansas exemption statutes.

## B. Date of Home Ownership

■ The parties contest whether the Debtors owned their current home in Overland Park, Kansas, before February 23, 2000, the date the involuntary petition was filed. The Trustee argues that the Debtors did not receive title until March 3, 2000, whereas the Debtors argue that they were the equitable owners of the property by February 11, 2000. The Debtors also advance the secondary argument that in an involuntary case they are entitled to claim property as exempt that is acquired during the gap period between the involuntary petition and the order for relief, which was not entered in this case until November 17, 2000. Because the Court finds that

the Debtors had a sufficient interest in their Kansas homestead before the involuntary petition was filed and could rightfully claim the Kansas exemption, the Court need not address the status of property acquired during the gap period between the involuntary petition date and the order for relief.

■ The filing of an involuntary petition creates an estate, which consists of all legal and equitable interests the debtor possesses as of the commencement of the case. 11 U.S.C. § 541(a). Ordinarily, the Trustee then administers the property of the estate. § 704. Equitable ownership of real property occurs when one party purchases land pursuant to a contract, but the other party retains title. *See, e.g., Gorham State Bank v. Sellens*, 244 Kan. 688, 772 P.2d 793, 796 (1989) ("An equitable interest in land is subject to attachment although the legal title is held by another."); *Star Lumber & Supply Co. v. Capital Constr. Co.*, 238 Kan. 743, 715 P.2d 11, 17 (1986) (stating that the parties to receive property under a contract have an equitable interest in that property even though the seller has not divested record title); *Capitol Federal Savings & Loan Association, Inc. v. Glenwood Manor, Inc.*, 235 Kan. 935, 686 P.2d 853, 864 (1984) (concluding that the transfer of equitable title was accomplished when a purchase agreement was signed, and that contract, coupled with the immediate right to possession thereof, constituted a conveyance sufficient to invoke the due-on-sale clause of a mortgage); *Stowell v. Kerr*, 72 Kan.

330, 83 P. 827, 828 (1905) (stating that the purchaser of real property "had an equitable interest in the land in question—an interest sufficient to uphold a homestead right" even when the title to that property remained vested in another).

Here, the Debtors tendered the $88,000.00 down payment on their Overland Park, Kansas, home in a brown paper bag to the seller on or before February 11, 2000. The Debtors also had the immediate right to possess that property and they began doing so on or before February 11, 2000. No deficiencies to the contract are alleged by any party,[5] and in fact the necessary paper work to transfer record title was duly completed. Thus, at the time the involuntary petition was filed on February 23, 2000, the Debtors were, at a minimum, the equitable owners of the Overland Park, Kansas, property, and this equitable interest would have been property of the estate but for the operation of the Kansas homestead exemption. Therefore, the Debtors had an equitable interest in a Kansas homestead and properly applied the Kansas exemption statute to their interest.[6]

## C. Denial of Homestead Exemption Based on Fraud

The Trustee argues that the Debtors' conduct suggests that they calculated a move to Kansas to take advantage of the unlimited Kansas homestead exemption in an effort to thwart the legitimate collection efforts of creditors under Missouri law,

---

**5.** The Statute of Frauds is not in issue in this case. *In re Estate of Hargreaves*, 201 Kan. 57, 439 P.2d 378, 382 (1968) ("Full performance of an alleged oral contract relieves a cause of action thereon from the inhibitions of the statute of frauds.").

**6.** The Trustee also argued that he had a special interest in the cash generated from the sale of the Debtors' real property in Gallatin,

Missouri. Because the Court finds that the Debtors had converted the cash proceeds of the sale into their Kansas homestead before the date of the involuntary petition, the Trustee had no corresponding special interest in the cash. The Trustee has not instituted any Chapter 5 proceeding for the Court to find otherwise.

and that the Debtors' homestead exemption should be denied on this basis. To support this theory, the Trustee points to the fact that the Debtors owed Missouri taxes dating back to 1997, they listed sixteen pages of general unsecured creditors on Schedule F to whom they owed $1,790,292.04,[7] and the Debtors had outstanding judgments in the State of Missouri. Additionally, the Trustee contends that after the Debtors moved to Kansas, the Debtors continued to have their mail forwarded to their Missouri attorney—an act, the Trustee argues, that was calculated to keep their creditors from knowing that they had left the State. Furthermore, the Trustee alleges that transferring $88,000.00 in cash in a paper bag in a basement of a home is not a typical real estate transaction, and asserts that the only reason to carry that amount of money in a paper bag instead of depositing it in a bank was to prevent creditors from attaching the proceeds from the sale of the Debtors' personal property and Gallatin, Missouri, home. Finally, the Trustee notes that despite the stipulation entered in this case that the Debtors moved to Kansas on November 1, 1999, the Debtors were not consistent with their representation of when they moved to Kansas. In sum, the Trustee states that the Debtors "clearly engaged in a course of conduct following the demise of their business, to place all their non-exempt assets beyond execution power."

 As an initial matter, the Court notes that when a debtor claims a state-created exemption, the scope of the claim is determined by state law. *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 873 (8th Cir.1988); *Williams v. Bradley (In re Bradley)*, 294 B.R. 64, 68 (8th Cir. BAP 2003). By asking the Court to deny a state law exemption based on fraudulent activity, the Trustee must show that the alleged fraud would be sufficient under the law of the state to deny the exemption—i.e., the Court should refrain from putting a gloss on state law exemption rights under the Bankruptcy Code when the determination of the nature and extent of the state law exemption is a matter of state law pursuant to 11 U.S.C. § 522(b)(2)(A). The Court further notes that there is no statutory provision in the Bankruptcy Code for denying an exemption based on fraud; rather, 11 U.S.C. § 548(a) allows a trustee to avoid a transfer of an interest of a debtor in property that was made with the actual intent to hinder, delay, or defraud any entity, and § 727(a)(2) allows a court to deny a discharge if a debtor engaged in conduct calculated to hinder, delay, or defraud a creditor. Both of those actions require an adversary proceeding, Fed. R. Bankr.P. 7001(1) and (4), and neither one seeks to define the limits of a state's exemption laws. In short, jurisprudence interpreting 11 U.S.C. §§ 548(a) and 727(a)(2) should not be imported when a matter is presented as a contested proceeding related to the propriety of a state law exemption. *See e.g.,* 5 *Collier on Bankruptcy* ¶ 522.09, p. 522–38 (Lawrence P. King et al. eds., 15th rev. ed. Matthew Bender 2003) (stating that the Bankruptcy Code is silent in addressing the effect of fraud when a debtor uses state law exemptions and that a "court must depend on state law, if state exemptions have been claimed, to determine whether the conduct warrants denial of the exemptions.").

 Under the old theorem of *odiosa et inhonesta non sunt in lege praesu-*

---

7. Schedule F does not reflect the Debtors unsecured priority tax claim of $15,060.33, which brings the Debtors' total liabilities to $1,805,352.37

*menda*,[8] fraud is never presumed and must be established by clear and convincing evidence. *Arkansas City v. Anderson*, 243 Kan. 627, 762 P.2d 183, 188 (1988). The right to claim a homestead exemption in Kansas is a constitutional rather than a statutory right. Kan. Const. art. 15 § 9.[9] The homestead exemption is liberally construed to safeguard its humanitarian, social, and economic purposes. *State ex rel. Apt v. Mitchell*, 194 Kan. 463, 399 P.2d 556, 558 (1965). "The homestead exemption cannot be subject to a forced sale except in the following situations: (1) to pay taxes; (2) to pay obligations contracted for the purchase of the homestead; (3) to pay obligations contracted for the erection of improvements on the homestead; or (4) any process of law obtained by virtue of a lien given by the consent of both husband and wife." *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 598 P.2d 188, 191 (1979) (internal quotation marks omitted). *See also* Kan. Const. art. 15 § 9. Neither the courts nor the Kansas legislature has the power to create new exceptions to the constitutional homestead exemption. *State ex rel. Braun v. Tract of Land in Northwest Quarter of Section Four*, 16 Kan.App.2d 757, 829 P.2d 600, 604 (1992) (holding that a drug forfeiture provision in a Kansas statute allowing real property to be seized violated the Kansas homestead exemption and was therefore unconstitutional), *aff'd* 251 Kan. 685, 840 P.2d 453 (1992). The only jurisprudential exception to the Kansas homestead exemption based on fraud is found in *Long v. Murphy*, 27 Kan. 375, 380, 1882 WL 930 (Kan.1882) (providing that when a debtor who knows that he is absolutely insolvent, unable to pay his debts, and having his creditors pressing him for the payment of their claims, [he] cannot transfer possession of goods purchased by him upon credit and take land in exchange and then claim the same as an exempt homestead because a party cannot turn that which is granted him for the comfort of himself and family, into an instrument of fraud.) (internal quotation marks omitted). Thus, the jurisprudential exception is limited to the conversion of funds in which existing creditors have an interest. *First Am. Title Ins. Co. v. Lett (In re Lett)*, 238 B.R. 167, 200 (Bankr.W.D.Mo.1999) ("In addition to the four exceptions in Kansas' homestead law, case law indicates that a homestead is not exempt from forced sale if it is purchased with funds in which 'existing creditors have rights therein,' or where there are 'peculiar equities' in favor of existing credi-

---

8. Odious and dishonest acts are not presumed in law.

9. That section provides:
 A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: Provided, That provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife: And provided further, That the legislature by an appropriate act or acts, clearly framed to avoid abuses, may provide that when it is shown the husband or wife while occupying a homestead is adjudged to be insane, the duly appointed guardian of the insane spouse may be authorized to join with the sane spouse in executing a mortgage upon the homestead, renewing or refinancing an encumbrance thereon which is likely to cause its loss, or in executing a lease thereon authorizing the lessee to explore and produce therefrom oil, gas, coal, lead, zinc, or other minerals.
 Kan. Const. art. 15 § 9.

tors.'") (citations omitted), *aff'd* 1 Fed. Appx. 599 (8th Cir.2001); *Douglas County Bank v. Fine (In re Fine)*, 89 B.R. 167, 174 (Bankr.D.Kan.1988) (providing that a badge of fraud is found when a debtor converts an asset into exempt property when a creditor had a special equity interest in the original asset). Thus, this jurisprudential exception is little more than the recognition that when funds equitably belonging to a third party are used to purchase a homestead, that third party has a right in the homestead itself *ab initio*.

In this matter, considering the litigation's present posture as a contested proceeding relating to an objection to an exemption, the Trustee has failed to demonstrate that the Debtors' homestead rights should be defeated by any exception to that exemption grounded in Kansas law. Furthermore, the Trustee has failed to demonstrate that he had a special interest in the cash generated from the sale of the Debtors' real property in Gallatin, Missouri, or in the sale of the Debtors' personal property because the Debtors converted that money into their exempt homestead prior to the filing of the involuntary petition. Absent an adversary proceeding to void that transaction as a fraudulent conveyance, that cash never became property of the estate in which the Trustee could claim a special interest. *Nihil habet forum ex scena.*[10]

## III. CONCLUSION

Accordingly, the Court will deny the Trustee's objection to the Debtors' claim of an exemption in their Kansas homestead. The Court finds that the Debtors were residents of Kansas for 114 days before the filing of the involuntary petition; the Debtors were the equitable owners of the homestead before the involuntary petition

was filed; the Debtors appropriately claimed the Kansas homestead exemption in their interest therein; and the Trustee has failed to demonstrate an exception—based on fraud or otherwise—to the Debtors' claim of the homestead exemption under Kansas law.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr.P. 9021.

---

**10.** The Court has nothing to do with what is not before it.