In re Kim G. MARONDE, Debtor.

No. 05–42535.

United States Bankruptcy Court,
D. Minnesota.

Nov. 8, 2005.

594

Robert J. Hoglund, Roseville, MN, for Debtor.

## MEMORANDUM ORDER SUSTAINING OBJECTION TO EXEMPTION UNDER 11 U.S.C. § 522(o) AND OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

NANCY C. DREHER, Bankruptcy Judge.

At Minneapolis, Minnesota, November 8, 2005.

The above entitled matter came for hearing before the undersigned on November 3, 2005, on the objection of the standing Chapter 13 Trustee to Debtor's claim to exemption and objection to confirmation of Debtor's modified Chapter 13 plan dated October 21, 2005. Appearances were noted on the record. Having heard and considered the evidence and the arguments, I make the following:

### FINDINGS OF FACT

This matter involves application of new § 522(o) to Debtor's claim of exemption to a home purchased by Debtor and his spouse on June 27, 2003. *See* 11 U.S.C. § 522(o) (2005). Debtor and his spouse purchased the home for $334,900 with the proceeds of a first mortgage in the amount of $200,000 and cash which was derived from the sale of their prior home. The property consists of .83 acres of land and

is within the laid out or platted portion of a city. Thus, only .5 acres of the property is exempt under Minnesota's homestead exemption provision. MINN. STAT. § 510.02. The parties have stipulated that the value of the non-exempt .33 of an acre is $9,275.

On October 20, 2003, Debtor took out a $50,000 home equity line of credit, in his name only, with U.S. Bank National Association, N.D., which was secured by a second mortgage against the homestead. In October 2003, December 2003, and January 2004, Debtor drew on that line of credit in the total amount of $43,335.40 and used all but approximately $3,500 of that amount to purchase a 2001 Ford F–150 Truck and a 2004 Pace Trailer. He thus owned the vehicles free and clear of liens. On February 9, 2004, Debtor drew the remaining available credit, $5,888.54, on the equity line which he used to pay down a credit card debt to MBNA. These draws left Debtor with approximately $50,000 in additional debt by way of a second mortgage on his home. The equity line was an interest only mortgage and Debtor made only interest payments through February 4, 2005.

By late 2004, at the latest, Debtor was in financial difficulty and was unable to pay his debts. During 2004 he liquidated the assets in a Roth IRA to pay living expenses. His income from self-employment and that of his wife, who had secured a job when finances got desperate, was insufficient to pay the couple's debts, including the interest on the second mortgage. Debtor had several old credit cards and accumulated more. Although the record, including the claims register of which the court has taken judicial notice,[1] is somewhat unclear, it is clear that Debtor

opened at least one new credit card account in November 2004 and three new card accounts in February 2005. At the time he filed for bankruptcy relief on April 20, 2005, Debtor owed money to at least seven credit card companies totaling approximately $60,000. Approximately half of that amount had been incurred on credit cards in the first part of 2005, much of it on the new accounts.

Debtor testified that sometime prior to these February 2005 transactions he spoke with a friend who told Debtor how he had reorganized his debt by selling some of his assets and using the proceeds to make a cash settlement with his creditors for 50% of the debt. Without the advice of counsel, and based on this information from his friend, Debtor proceeded to try to do just that, except that instead of attempting to settle old debt with cash, he undertook to acquire new unsecured debt to pay old secured debt, and then schemed to settle the new unsecured debt with cash. With his new and old credit cards he commenced making balance transfers from those credit cards to pay down his second mortgage. He made the following payments on his equity line account using funds transferred from several credit cards:

| | |
|---|---|
| February 4, 2005 | $ 1,500 |
| February 8, 2005 | $21,000 |
| February 9, 2005 | $ 5,000 |
| February 11, 2005 | $ 4,000 |

At the time he opened the accounts and made the transfers Debtor knew that he did not have ability to pay the debt he was incurring. He also made the withdrawals from separate accounts in each instance. Debtor did not disclose these transfers in his Statement of Financial Affairs appended to his later bankruptcy petition. Be-

---

1. The court may take judicial notice of all filed documents in Debtors' current case. *See* FED. R. EVID. 201; *In re Williams,* 316 B.R. 534, 537 n. 5 (Bankr.E.D.Ark.2004)(noting that a court may take judicial notice of its own orders and of records in a case before the court); *see also In re Penny,* 243 B.R. 720, 723 n. 2 (Bankr.W.D.Ark.2000).

tween February 15, 2005, and March 9, 2005, Debtor attempted 6 additional transfers from credit card accounts to his second mortgage account in the total amount of $22,300, but each of these attempted transfers was reversed by the card companies which had apparently detected the activity. Once again, each of these attempts was made on a separate credit card account, and once again Debtor knew that he did not have the capacity to pay back the sums he was attempting to transfer. Had Debtor been successful in his attempts to make the remaining last 6 transfers from credit cards to his home equity line he would have succeeded in paying off his second mortgage and left unsecured credit card debt of an additional $22,300.

Approximately one month before meeting with his current attorney, Debtor consulted with another attorney about the possibility of filing bankruptcy in a brief five-minute phone call. Debtor first met with his current bankruptcy attorney on March 14, 2005. Debtor met a second time with his attorney and signed a retainer agreement with the attorney's firm to represent him in connection with a bankruptcy filing on or about March 20, 2005. Debtor and his attorney discussed the issue of Debtor selling the truck and trailer. Debtor and his attorney also discussed the concept of exempt property, and Debtor knew that the truck and trailer would not be entirely exempt in a bankruptcy case but that his home equity would be. On March 29, 2005, Debtor sold the trailer, in an arms length transaction, to a third party for $7,500. On April 2, 2005, the Debtor traded in the truck for a 1996 Pontiac Bonneville and received $13,708.25 in cash back from the dealership as part of the trade. On April 11, 2005, the Debtor used the funds from the sale of the truck and trailer to make a payment of $19,130.42 on the equity line, which brought the balance on this account down to zero. Debtor filed

for Chapter 13 relief on April 20, 2005. The equity line is still open to Debtor, but carries a zero balance. Between the time he sold the truck and trailer and the time he filed the bankruptcy petition Debtor made no attempt to negotiate with his unsecured creditors.

Debtor filed a Chapter 13 petition and Plan. His modified Chapter 13 plan proposed to pay $215 for 5 months and $279 over 55 months for a total of $16,420.00. Of this amount, his unsecured creditors would receive approximately $13,678. Debtor claimed the equity in his home as exempt in the amount of $69,572. He listed non-exempt assets valued at a total of $3,375. Debtor also paid his mother $1,000 in January 2005 on an unsecured obligation that the parties agree would be an avoidable preference under 11 U.S.C. § 547.

## CONCLUSIONS OF LAW

### I. BURDEN OF PROOF

■ "The objecting party has the burden of proving that the exemptions were not properly claimed." FED. R. BANKR. P. 4003(c). Therefore, the Trustee must establish that Debtor's claim of exemption to his homestead is improper or limited under 11 U.S.C. § 522(*o*). See *Gagne v. Bergquist*, 179 B.R. 884, 885 (D.Minn.1994) (To meet this burden, the Trustee must produce evidence which rebuts the prima facie effect of the claimed exemption). Specifically, the Trustee must show that Debtor made the transfer of property with the intent to hinder, delay or defraud a creditor.

■ Debtor has the burden of proving that the conditions for confirmation have been satisfied. See, e.g., *In re Smith*, 328 B.R. 797, 801 (Bankr.W.D.Mo.2005) (*citing* Keith M. Lundin, Chapter 13 Bankruptcy,

3D, § 217.1 (2000 & Supp.2004)); *see also e.g., Smyrnos v. Padilla (In re Padilla),* 213 B.R. 349, 352 (9th Cir. BAP 1997); *First Nat'l Bank of Boston v. Fantasia (In re Fantasia),* 211 B.R. 420 (1st Cir. BAP 1997).

## II. 11 U.S.C. § 522(*o*)

The first issue is whether Debtor may exempt that portion of his homestead equity that he acquired when, days before he filed his bankruptcy petition, he sold his truck and trailer and applied the proceeds to his equity line of credit. The Trustee rests her objection on new § 522(*o*) of the Bankruptcy Code which was added by the Bankruptcy Abuse Prevention and Consumer Protection Act (The 2005 Act). Pub.L. No. 109–8, § 308, 119 Stat. 23, 81–2 (2005). On the date the President signed the bill, April 20, 2005, Debtor filed a petition under Chapter 13 of the Bankruptcy Code. Section 1501(b)(2) of the 2005 Act states that § 522(*o*) "shall apply with respect to cases commenced under Title 11, United States Code, on or after the date of the enactment of this Act." Pub.L. No. 109–8, § 1501(b), 119 Stat. 23, 216. Debtor agrees that § 522(*o*) is applicable in this case.

11 U.S.C. § 522(*o*) states, in pertinent part:

> For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—
>
> (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
> \*    \*    \*    \*    \*    \*
>
> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(*o*)(2005).

The Bankruptcy Code allows states to opt-out of the federal exemption scheme and further allows debtors in non-opt-out states, such as Minnesota, to take advantage of either federal exemptions or state exemptions. See 11 U.S.C. § 522(b)(1) and (2). Section 522(b)(3) provides that if the debtor opts for the state exemption scheme or the state opts out of the federal exemption scheme, "subject to subsection (*o*) and (p)", the debtor is allowed federal exemptions applicable under federal laws other than the federal exemption scheme provided by the Bankruptcy Code and exemptions allowable under state law applicable on the date of the filing of the petition. 11 U.S.C. § 522(b)(3). The 2005 Act set new limitations on the length of time a debtor must reside in a state to take advantage of a particular state's exemption laws (11 U.S.C. § 522(b)(3)(A)) and, in its first major shift in attitude since passage of the 1978 Code, Congress began to put the brakes on the freedom with which states could protect their state residents by providing generous homestead protection laws. See 11 U.S.C. § 522(p) and (q). The 2005 Act added § 522(*o*) and made the right to take advantage of state exemptions "subject to subsection (*o*) and (p)" of the Code. 11 U.S.C. § 522(b)(3)(A). The Congressional purpose is clear: debtors seeking the protection of state exemptions must meet their state exemption provision requirements as limited by § 522(*o*) and (p).

Minnesota permits a debtor to claim an exemption in a house owned and occupied as a dwelling place together with the land upon which it is situated as limited by state law. MINN. STAT. ANN. § 510.01 (2002). Since Debtor's homestead is "within the laid out or platted portion of a city, its area must not exceed one-half of an acre" and the value of the homestead exemption, whether the exemption is claimed jointly or individually, may not exceed $200,000. MINN STAT. ANN. § 510.02. On October 21, 2005, Debtor amended his Schedule C—Property Claimed as Exempt, to claim a value of $69,572.00 as exempt, limited to the dwelling and the contiguous .5 acres as allowed by the statute.

The more pressing question, and the one which the parties litigate here, is whether Debtor is subject to the limitation provided in § 522(o). This turns on whether Debtor acted "with the intent to hinder, delay, or defraud a creditor" when he sold his truck and trailer and used the non-exempt proceeds from the sales to increase the equity in his homestead by $18,750.46. Congress gave no guidance regarding the construction of this quoted term. Prior to the enactment of § 522(o), however, some courts noted that there were no statutory provision in the Bankruptcy Code for denying a homestead exemption based on fraud. See In re McGinnis, 306 B.R. 279, 285 (Bankr.W.D.Mo.2004). That has now changed. The statutory language is similar, if not identical to language contained both in fraudulent conveyance provisions of the Bankruptcy Code as well as denial of discharge. Section 548 provides that a trustee may avoid a pre-petition transfer of assets of the debtor if the debtor made the transfer "with actual intent to hinder, delay, or defraud" any past or future creditor. 11 U.S.C. § 548(a)(1). Section 727(a)(2) bars a discharge for such conduct. 11 U.S.C. § 727(a)(2). Each of those statutory sections has a developed body of case law construing its meaning. It is only logical to assume that Congress intended that by using essentially the same phrase in § 522(o), cases construing the fraudulent conveyance and discharge provisions also would apply to add body to the bare words of this new Congressional language.

The similarities may suggest parallel analysis. If so, cases that have struggled with exemption planning, and when it is that a "pig become a hog" will retain their currency. If more than the bare conversion of assets is required in a particular jurisdiction for exemption planning to cross the line for purposes of subsection 727(a)(2), the courts may well require a similar additional quantum of facts in order to trigger application of section 522(o).

Margaret Howard, *Exemptions Under the 2005 Bankruptcy Amendments: A Tale of Opportunity Lost,* 79 Am. Bankr.L.J. 397, 400 (2005).

█ It is elemental developed case law, moreover, that similar words within one statutory body of legislation should, where reasonable, be interpreted with the same meaning. *See e.g. In re Sholdan,* 218 B.R. 475, 481 (Bankr.D.Minn.1998), *aff'd* 217 F.3d 1006 (8th Cir.2000) (citing cases)("The Eighth Circuit has approved the use of the same inferential process in applying the statutory language 'with intent to hinder, delay or defraud creditors,' wherever that language is found—in state fraudulent-transfer statutes, 11 U.S.C. § 548(a), or 11 U.S.C. § 727(a)(2)"); *Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 874 (8th Cir.1988); *Mueller v. Redmond (In re Mueller),* 867 F.2d 568, 570 (10th Cir.1989); *In re Curry,* 160 B.R. 813 (Bankr.D.Minn.1993).

The Eighth Circuit law is well developed. In short, since direct evidence of wrongful intent is rarely forthcoming, the court may infer such intent from evidence of the several badges of fraud and the "circumstances surrounding the transfer." *Brown v. Third Nat'l Bank (In re Sherman),* 67 F.3d 1348, 1353 (8th Cir. 1995). The presence of several or more "badges of fraud" gives rise to a presumption of fraudulent intent. *In re Northgate Computer Systems, Inc.,* 240 B.R. 328, 360–61 (Bankr.D.Minn.1999) (*citing Kelly v. Armstrong,* 141 F.3d 799, 802 (8th Cir. 1998); *In re Bateman,* 646 F.2d 1220, 1223 (8th Cir.1981); *In re Sherman,* 67 F.3d at 1353–1354) (presence of several badges of fraud "can constitute conclusive evidence" of the proscribed intent). Among the badges of fraud that the trial court may consider in passing on the issue of intent are:

1. the transfer or obligation was to an insider;

2. the debtor retained possession or control of the property transferred after the transfer;

3. the transfer or obligation was disclosed or concealed;

4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

5. the transfer was of substantially all the debtor's assets;

6. the debtor absconded;

7. the debtor removed or concealed assets;

8. the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor was transferred the assets to an insider of the debtor.

*Northgate Computer Systems, Inc.,* 240 B.R. at 360–61.

These badges are the same under the Minnesota Uniform Fraudulent Transfer Act. *See* MINN. STAT. ANN. § 513.44(b). They are examples of instances when fraud may be inferred; there is no need to prove all of them and there is no weighting system applicable. The simple question in the final analysis is whether Debtor is attempting to thwart his creditors rather than making an honest attempt to repay them. *In re Mattson,* 241 B.R. 629, 637 (Bankr.D.Minn.1999).

Here an inference of intent to hinder, delay and defraud creditors is inescapable. Many of the badges of fraud are present: Debtor essentially transferred assets to himself; this was done at a time when he was insolvent; and the transfers constituted substantially all of his non-exempt assets. Debtor did not merely transmute non-exempt assets into exempt assets for the purpose of bankruptcy estate planning. A debtor may still convert non-exempt assets into exempt assets on the eve of bankruptcy, but the conversion must not be done with intent to defraud creditors manifested by extrinsic evidence. *Federal Sav. & Loan Ins. Corp. v. Holt (In re Holt),* 894 F.2d 1005, 1008 (8th Cir. 1990). Debtor's conversion was part and parcel of an overall scheme to defraud his creditors which he hatched at the time he was insolvent. If his original scheme had succeeded he would have paid down his second mortgage entirely with funds obtained from credit cards. It didn't; they

caught on; the scheme failed; and he turned to Plan B, hatched after he met with his bankruptcy attorney. Instead of obtaining the money to fully pay down his second mortgage from credit cards, he sold the truck and trailer and used the proceeds to pay the remainder of his second mortgage. The sales activity took place within days of filing his petition, in contemplation of bankruptcy, and done only after his initial attempt to defraud his creditors partially failed. This is more than enough to reach the factual finding that his intent was to hinder, delay and defraud his creditors.

Debtor tries to cast the facts with a narrow focus. He argues that he borrowed the money from his equity line account and then, in an innocent act of bankruptcy planning, sold those assets in order to pay back that very creditor he initially borrowed from to obtain the assets, while in the process preserving equity in his home. If that was the extent of the facts before me, I might agree. It is, however, a much too narrow understanding of the entire scenario. In this case, Debtor engaged in a scheme to defraud his creditors by using his (at the time) good credit to obtain a number of credit cards, use the cash advances, in the form of balance transfers, from those cards to pay off his equity credit line. He then intended to liquidate his truck and trailer to raise cash that he could offer to settle with his new creditors for less than he owed. That he failed and had to resort to Plan B and put the proceeds from the sale of the truck and trailer into his home does nothing to erase the original intent of the scheme: don't pay creditors in full and surely do not make an honest attempt to do so.

Because Debtor transformed non-exempt assets into exempt assets within the time period provided and with the requisite intent to hinder, delay, and defraud his

creditors, his homestead exemption to the extent of the transfer of $18,750.46 is denied and the trustee's objection sustained.

### III. CONFIRMATION

■ Section 1325 of the Bankruptcy Code provides the requirements for confirmation of a Chapter 13 plan. In relevant part, the plan must meet the best interests of creditors test and the good faith test. 11 U.S.C. § 1325(a)(3) and (4) (2000). The court is obligated to ensure that each plan meets these requirements regardless of whether any creditor objects. *In re Larson*, 245 B.R. 609, 614 (Bankr.D.Minn. 2000) (citing cases). The best interests of creditors test requires that:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4).

■ Debtor's plan provides for payment of $279.00 per month for 55 months, in addition to the $1,075.00 already paid to the Trustee at the time of the modification. Payments under the plan total $16,420.00. Having denied Debtor homestead exemption in an amount that exceeds the payments under the modified plan, the plan fails to meet the best interest of creditors test and may not be confirmed.

■ That is not, however, the only basis for denial of confirmation. The plan must also be filed in "good faith." 11 U.S.C. § 1325(a)(3). Good faith is determined by the totality of the circumstances including:

> (1) The type of debt sought to be discharged;

(2) Whether the debt would be non-dischargeable under Chapter 7; and

(3) The debtor's motivation and sincerity in seeking Chapter 13 relief.

(4) The debtor's accuracy in stating his debts and expenses;

(5) The debtor's honesty in the bankruptcy process; and

(6) Whether the Bankruptcy Code is being unfairly manipulated;

*In re Mattson,* 241 B.R. at 637 (*citing In re Buchanan,* 225 B.R. 672, 674 (Bankr. D.Minn.1998); *In re Sitarz,* 150 B.R. 710, 721 (Bankr.D.Minn.1993)). Based on the conduct described, Debtor lacked the proper motivation and sincerity in seeking Chapter 13 relief and he attempted to unfairly manipulate the Bankruptcy Code. When his scheme failed outside of bankruptcy he attempted to complete the scheme in bankruptcy. A clear and abusive manipulation of the Bankruptcy Code.

ACCORDINGLY IT IS HEREBY ORDERED THAT:

1.  The Trustee's objection to Debtor's homestead exemption is SUSTAINED and Debtor's homestead exemption is DENIED pursuant to 11 U.S.C. § 522(*o*) to the extent of $18,750.46.

2.  Confirmation of Debtor's modified plan dated October 21, 2005, is DENIED.