**In re Earl Leonard LACOUNTE, and Janice Corrine Lacounte, Debtors.**

**No. 05–61209–13.**

United States Bankruptcy Court, D. Montana.

Dec. 8, 2005.

810

Terrance L. Toavs, Wolf Point, MT, for Debtors.

**MEMORANDUM of DECISION**

RALPH B. KIRSCHER, Bankruptcy Judge.

In this Chapter 13 bankruptcy, after due notice, a hearing was held September 20, 2005, in Billings on confirmation of Debtors' Chapter 13 Plan filed June 22, 2005, and on the Trustee's Objection to the homestead exemption claimed by Debtors. The Chapter 13 Trustee, Robert G. Drummond, appeared at the hearing in support of his Objection. Debtors were represented at the hearing by their counsel of record, Terrance Toavs. Both Earl Leonard Lacounte ("Lenny") and Janice Corrine

Lacounte ("Janice") testified and Exhibits 1 through 5 and 7 were admitted into evidence without objection. At the conclusion of the hearing, the Court granted the Trustee through October 7, 2005, to file a brief and also granted Debtors the same amount of time to simultaneously supplement the brief previously filed by Debtors on July 29, 2005, and took the matter under advisement. The Trustee timely filed his brief on October 7, 2005. Debtors' supplemental brief was tardily filed on October 11, 2005. The matter is ready for decision.

## BACKGROUND

Debtors filed a voluntary Chapter 7 bankruptcy petition on April 21, 2005. In their original Schedule A, Debtors listed one parcel of real property consisting of their homestead property. Debtors disclose the current market value of the property as $75,000. Debtors' original Schedule F, also filed April 21, 2005, reflects that Debtors have unsecured debt totaling $178,722.99, all identified as "Credit card purchases".

Debtors amended both their Schedule A and their Schedule F on May 7, 2005. Schedule A was amended to include Janice's one-third future interest in a home located at 201 North Maple Street. Schedule F was amended to reflect unsecured debt for "Credit card purchases" of $180,005.77. Thereafter, Debtors filed a motion to convert their Chapter 7 bankruptcy to a Chapter 13 bankruptcy. Debtors' request to convert to Chapter 13 of the Bankruptcy Code was granted in an Order entered June 6, 2005.

On June 21, 2005, following conversion, Debtors amended their Schedule I, showing no change in Debtors' combined monthly income. Debtors also amended Schedule J, reducing their monthly expenses from $3,711.41 to $3,518.19, thus paving the way for Debtors to file a Chapter 13 plan that contemplates monthly payments of $241.00 over a period of 36 months.[1]

Lenny and Janice have been married for over 35 years and both are employed. According to Janice, the pressures of her job with the State of Montana, Department of Public Health and Human Services, Child and Family Services, so deeply affected Janice that she turned to gambling. Debtors' unsecured debt is almost exclusively attributable to Janice's gambling. Janice testified that the debt is simply "overwhelming". According to Janice, it took about 2 years to accumulate the unsecured debt totaling $180,005.77.

Lenny was not aware of Janice's gambling addiction and only learned of Janice's gambling and the resulting debt in August of 2004. Lenny apparently learned of Janice's compulsive gambling when Debtors ran out of money. To cover Debtors' living expenses, Lenny borrowed $3,000.00 against Debtors' Corvette on August 5, 2004. Moreover, when Debtors realized they were not financially able to repay the gambling debt, they also sought legal counsel and began grappling with the task of how to handle the debt. As Lenny explained, his earnings were not enough to cover even the interest portion of Janice's gambling debts.

Debtors filed a declaration of homestead in July or August of 2004.[2] Additionally,

---

1. Total plan payments under Debtors' proposed plan will be $8,676.00. After the Trustee deducts his fee of 10 percent, unsecured creditors will receive roughly $7,808.40, which sum is approximately 5 percent of Debtors' unsecured credit card debt.

2. The Court notes a discrepancy as to when the homestead declaration was filed. [Janice

in contemplation of possible bankruptcy, Debtors' daughter consulted with attorneys in Seattle, Washington and an attorney in Billings. As a result of the daughter's discussions with various attorneys, Debtors were advised to sell the things they did not need and apply the proceeds to their home mortgage. Lenny testified that his first thought when learning of Janice's enormous debt was to pay as much of the debt off as possible with his retirement plan. However, Lenny had a change of heart. As explained by Lenny in his own words: "I didn't want to hurt my wife's feelings. This has nothing to do with me, other than that's my wife and I thought why should I give up all this stuff when I can almost pay my home off." Debtors were also advised in August of 2004 to discontinue all payments on their unsecured obligations. Debtors nevertheless continued to make the regular monthly payments on their home and truck.

Before liquidating any assets, Lenny borrowed $10,000.00 from his retirement plan in December of 2004. Lenny testified that he needed the $10,000.00 to "get by" and to pay some bills. Lenny stated that he needed to have money in his hands. The $10,000.00 loan from Lenny's retirement account is not disclosed in Debtors' Schedules. Nevertheless, it appears from the record that since December of 2004, Debtors have faithfully made the payments on the retirement loan.

Consistent with the advice of their daughter and the advice she received from various attorneys, Debtors began liquidating their assets. First, on January 1, 2005, Debtors sold their 1958 Impala with trailer to their son-in-law for the sum of $12,500.00. Janice and Lenny both conceded that Debtors were contemplating filing bankruptcy at the time of the sale. Debtors purchased the car in the 1970's. Janice testified that her husband really loved the car, but Debtors sold the car because they needed to put the money on their home. As stated by Janice, "we need a home to live in more than we need vehicles to drive." All the proceeds from the sale were applied to Debtors' home mortgage on January 5, 2005.

Debtors also sold their 1992 Corvette on January 11, 2005, to another non-related individual for the sum of $13,000.00. Debtors had a lien against the Corvette of approximately $3,000.00 as a result of the loan Lenny obtained in August of 2004. Thus, $3,000.00 of the sales proceeds were used to pay off the lien against the Corvette. The balance of the proceeds in the sum of $10,000.00 were given to Lenny's sister, as noted below. Debtors sold their third vehicle, a 1975 Chrysler Cordoba on January 3, 2005, for the sum of $300.00.

Next, on January 10, 2005, Lenny sold his future undivided one-third interest in his mother's 680 acre farm to his sister for the sum of $30,000.00. Debtors applied the entire proceeds of $30,000.00 to their home mortgage on January 11, 2005. A day or two after the January 10, 2005, transaction with his sister, Lenny and his sister agreed that the value of Lenny's future interest was $20,000.00 rather than $30,000.00. Lenny thus used the remaining proceeds of $10,000.00 from the sale of the 1992 Corvette to repay his sister. The transfer of $10,000.00 to Lenny's sister is not disclosed in Debtors' Schedules. In sum, in January of 2005, Debtors sold nonexempt assets with a value of $42,800.00 and used $42,500.00 of the sales

testified on direct that the homestead declaration was filed in July 2004. On cross examination, Janice indicated the homestead was filed in July or August 2005. Lenny testified on cross examination that the homestead was filed in August after Lenny discovered the unsecured credit card debt].

proceeds to reduce the principal balance owing on their home mortgage.

Janice testified that Debtors applied the $42,500.00 to the home mortgage rather than the debt on their truck because the loan on the truck was interest free. However, when questioned by the Trustee as to why Debtors did not repay their unsecured debt, which carried a higher interest rate than Debtors' home mortgage, Janice changed her mind and testified that interest was not a concern. Janice went on to explain that Debtors applied the funds to their home mortgage because Debtors were concerned about their retirement. Despite their concerns regarding retirement, Debtors used almost all the proceeds from the sale of four assets to pay down the balance on their home mortgage. Lenny did not use the proceeds to repay the loan previously taken against his retirement plan.

Finally, Janice transferred her undivided one-third interest in her 81-year old mother's home back to her mother in April of 2005 because Janice understood that if she did not transfer the interest to her mother, Janice's mother would risk losing the home as a result of Debtors' bankruptcy case. The value of Janice's interest in the property is disclosed in Debtors' Statement of Financial Affairs at $15,000.00.

Debtors' lives were further disrupted when Citibank filed suit against Lenny in December of 2004. According to Lenny, the suit was subsequently dismissed. After liquidating the assets Debtors felt they did not need, Debtors sought protection under Chapter 7 of the Bankruptcy Code on April 21, 2005.

## STANDARD OF REVIEW

When drafting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress did not provide a particular standard of review to apply with respect to 11 U.S.C. § 522(*o*). However, 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 522.08[5][b] (15th ed. rev.), explains that a preponderance of the evidence is the appropriate standard of review:

In *Grogan v. Garner* [498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ], the Supreme Court held that preponderance of the evidence is the appropriate standard of proof for determining exceptions to discharge based on fraud. Because there is nothing in the language of section 522(*o*) or its legislative history to suggest that Congress intended to require the more exacting clear-and-convincing standard, the preponderance of the evidence standard should apply in proceedings brought under section 522(*o*). Application of this standard would permit the bankruptcy court to give collateral estoppel effect to elements of claims actually litigated in a prior proceeding that are identical to the elements of an objection under 522(*o*).

Indeed, under other provisions of the Bankruptcy Code using the phrase "intent to hinder, delay or defraud a creditor", such as a proceeding to deny a Debtor's discharge under 11 U.S.C. § 727(a), the Court has applied the preponderance of the evidence standard. *See, e.g., In re Weyer,* 16 Mont. B.R. 162, 166 (Bankr. D.Mont.1997). Accordingly, this Court agrees with the position taken by COLLIER ON BANKRUPTCY that preponderance of the evidence is the appropriate standard of review in an action brought under 11 U.S.C. § 522(*o*). This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

## APPLICABLE LAW

Sections 308 and 322 of BAPCPA add three new subsections to the exemption provisions in § 522 of the Bankruptcy

Code which limit the homestead exemption, § 522(*o*), (p) and (q). Although most of the provisions in BAPCPA apply to cases filed after October 17, 2005, 11 U.S.C. § 522(*o*), added by Pub.L. No. 109–8, § 308(2) (2005), is effective in cases commenced on or after the date of enactment, April 20, 2005. Debtors commenced the instant case on April 21, 2005, and thus, 11 U.S.C. § 522(*o*) is applicable to this case. The Court is aware of only one published decision interpreting this statutory provision. *In re Maronde*, 332 B.R. 593 (Bankr.D.Minn.2005).

"It has long been the rule in this and other jurisdictions that [prior to April 20, 2005,] the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy [was] not fraudulent per se. *In re Dudley*, 72 F.Supp. 943, 945–947 (D.Cal.1947), *aff'd per curiam, Goggin v. Dudley*, 166 F.2d 1023 (9th Cir.1948); *Love v. Menick*, 341 F.2d 680, 682–683 (9th Cir.1965); see 1 COLLIER ON BANKRUPTCY, ¶ 6.11, p. 853." *Wudrick v. Clements*, 451 F.2d 988, 989–90 (9th Cir.1971). *See also In re Stern*, 345 F.3d 1036, 1043 (9th Cir. 2003). Subsection 522(*o*) of BAPCPA was obviously added to the Bankruptcy Code by Congress to curb a perceived abuse by debtors of the above-referenced longstanding rule. The newly added subsection provides:

> For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—
>
> (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a

creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

■ The foregoing provision is limited to conversion by a debtor of nonexempt property into a homestead exemption with the intent to hinder, delay, or defraud a creditor. The phrase "with the intent to hinder, delay, or defraud a creditor" is a term of art that is not defined in the Bankruptcy Code. However, the same terminology also appears in 11 U.S.C. § 548(a)(1)(A) and, as noted above, in 11 U.S.C. § 727(a)(2). Because Congress elected to draft 11 U.S.C. § 522(*o*) with language that is identical to that used in 11 U.S.C. §§ 548(a)(1)(A) and 727(a)(2), this Court concludes that case law under 11 U.S.C. §§ 548(a)(1)(A) and 727(a)(2) provides instructive guidance with respect to § 522(*o*).

With regard to interpretation of the phrase "with the intent to hinder, delay, or defraud a creditor", in the case of *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753 (9th Cir.1985), the Ninth Circuit Court of Appeals held that under § 727(a)(2), a plaintiff must demonstrate a debtor's actual intent to conceal assets, or to hinder, delay, or defraud creditors. The Court in *Devers* wrote:

> [An] actual intent to hinder, delay, or defraud must be shown. Constructive fraudulent intent cannot be the basis for denial of discharge, *In re Adlman*, 541 F.2d 999, 1003 (2d Cir.1976), but fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *Farmers Co-op. Association v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982). The statute is to be construed liberally in favor of debtors and strictly against the objec-

tor. *In re Adlman*, 541 F.2d at 1003; *In re Rubin*, 12 B.R. 436, 440 (Bankr. S.D.N.Y.1981).

\* \* \* \* \* \*

Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of a case. *In re Nazarian*, 18 B.R. 143, 146 (Bankr.D.Md.1982).

*Id.* at 753–54; *In re Weyer*, 16 Mont. B.R. 162, 167–68 (Bankr.D.Mont.1997). *See also First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342–43 (9th Cir. 1986) (A "discharge of debts may be denied under section 727(a)(2)(A) only upon a finding of actual intent to hinder, delay, or defraud creditors. Constructive fraudulent intent cannot be the basis for denial of a discharge.") (citations omitted).

In *Devers*, this Court denied the debtors a discharge based on the debtors' conduct, which was found to be in violation of § 727(a). (Unpublished opinion). The conduct complained of by the creditor bank was that debtors were selling secured livestock and commingling the proceeds therefrom with other assets. In addition, the debtors were unable to explain the disappearance of missing ranch equipment.

The Ninth Circuit affirmed the decision of this Court, and the decision of the District Court of Montana, finding that the debtors' explanation regarding the disappearance of the ranch equipment was:

> [Y]et another indication of their disregard of their responsibilities during the reorganization process. The Creditor proved that the Debtors once had owned the tractor, and that they did not produce it for repossession. While the burden of persuasion rests at all times on the creditor objecting to the discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case. *In re Reed*, 700 F.2d 986, 992–93 (5th Cir.1983). A debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge under section 727(a)(5).

*Devers*, 759 F.2d at 754. As explained further by the Ninth Circuit in a later case, under § 727(a)(2)(A):

> Denial of discharge ... need not rest on a finding of intent to *defraud*. Intent to hinder or delay is sufficient. *Matter of Smiley*, 864 F.2d 562, 568 (7th Cir.1989); *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986). Furthermore, a debtor need not succeed in harming creditors to warrant denial of discharge because "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *In re Adeeb*, 787 F.2d at 1343.

*Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281–1282 (9th Cir.1996).

## DISCUSSION

■ After applying the foregoing standard to the case *sub judice*, the Court concludes that Debtors' sale of nonexempt assets and application of the proceeds to the principal balance of their home mortgage was a violation of 11 U.S.C. § 522(*o*). As to the weight given to the testimony of Janice and Lenny, the Court finds that Lenny was a truthful witness and his testimony was credible. The Court, on the other hand, assigns little weight to Janice's testimony. Janice was clearly eager to discuss the stress caused by her employment, but was reluctant to answer any question that could impact the Court's decision in this case. The following exchange between Janice and the Chapter 13 Trustee illustrates the Court's point:

> Trustee:   Did you make a decision that you needed to make some transfers of

property in order to prepare for filing your bankruptcy?

Janice: Um, well its, I'm still not understanding, I apologize if I don't understand what you're asking me.

Trustee: Okay, let me take you back to your previous testimony that you had sought legal advice.

Janice: Correct

Trustee: and you wanted some assistance to get out of your financial straights with that legal advise, Correct?

Janice: Correct.

Trustee: And ah, at some point after that you decided to file a bankruptcy case.

Janice: Correct.

Trustee: Do you remember about when that was?

Janice: No I really don't, I'm sorry, I don't.

Trustee: After you made the decision to file your bankruptcy case, did you also make the decision that you had to transfer some property before you filed your bankruptcy case.

Janice: Um, the only thing I know is that we could do, is um we could file our homestead papers, and we did that in July on our home, because we thought um, as probably a lot of people do, or that don't understand bankruptcy, that if you don't protect your home in some way, that you can lose it.

Trustee: Okay, that didn't really answer my question. What my question was was if you had decided you needed to transfer prior to the filing of your bankruptcy case.

Janice: Um, I don't know, I can't answer that.

Trustee: You don't?

Janice: No.

Disregarding Janice's testimony and relying exclusively on the testimony of Lenny, the Court concludes that Debtors intentionally sold or transferred various nonexempt assets with the purpose of diverting funds away from Debtors' creditors. The Court's finding is premised, in part, on the fact that Debtors sold their nonexempt assets and applied the proceeds to their home mortgage only months before Debtors filed their bankruptcy petition, during a period of time when Debtors were admittedly insolvent and contemplating bankruptcy. The Court's decision, is also premised on Lenny's testimony. As Lenny honorably explained, he was angry with the financial situation he found himself in and he could not justify giving up assets that he had worked so hard for when he could simply sell the assets and apply the proceeds to his home mortgage.

Debtors' actions of selling nonexempt assets and applying the proceeds to their home mortgage were undertaken with the intent to put the equity that existed in the items of property sold out of the reach of Debtors' creditors. According to controlling case law: "When a debtor admits that he acted with the intent penalized by section 727(a)(2)(A), there is no need for the court to rely on circumstantial evidence or inferences in determining whether the debtor had the requisite intent." *Adeeb*, 787 F.2d at 1343.

The Court is very sympathetic to the circumstances leading to Debtors' unenviable financial situation and had Debtors filed their bankruptcy petition just 2 days earlier, Debtors may have been able to successfully achieve their intended result. However, the deliberate and calculated actions taken by the Debtors in this case, which actions do not appear to have been done with any fraudulent intent, are no longer allowed under BAPCPA.

■ Because Debtors' homestead exemption must be reduced by the sum of $42,500 under 11 U.S.C. § 522(*o*), Debtors' Chapter 13 Plan filed June 22, 2005, which contemplates payments totaling $8,676.00, does not meet the best interest of creditors' test. Accordingly, the Court will enter a separate order to provide as follows:

IT IS ORDERED that the Trustee's Objection to Property Claimed as Exempt filed July 19, 2005, is SUSTAINED; and Debtors' claimed homestead exemption is reduced by the sum of $42,500.00.

IT IS FURTHER ORDERED that confirmation of Debtors' Chapter 13 Plan filed June 22, 2005, is DENIED; and Debtors shall have through December 28, 2005, to file an amended Chapter 13 plan.

IT IS FURTHER ORDERED and NOTICE IS HEREBY GIVEN that the hearing on confirmation of Debtors' amended Chapter 13 plan shall be held on Tuesday, January 24, 2006, at 10:00 a.m., or as soon thereafter as counsel can be heard, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA, and any objections to Debtors' proposed Chapter 13 plan shall be filed on or before January 17, 2006.