**In re Gerald L. AGNEW and Jill C. Agnew, Debtors.**

**No. 05–17361.**

United States Bankruptcy Court,
D. Kansas.

Nov. 6, 2006.

39. *CK Liquidation Corp.*, 343 B.R. at 383.

40. *Id.*

Dennis E. Shay, Smith, Shay, Farmer and Wetta, LLC, Wichita, KS, for Debtors.

## MEMORANDUM AND ORDER DENYING TRUSTEE'S OBJECTION TO HOMESTEAD PURSUANT TO 11 U.S.C. § 522(*o*)(4)[1]

DALE L. SOMERS, Bankruptcy Judge.

The matter before the Court is the Trustee's Objection to Homestead Exemption pursuant to 11 U.S.C. § 522(*o*)(4).[2] The Trustee, Carl B. Davis, appears by Carl B. Davis. The Debtors, Gerald L. Agnew and Jill C. Agnew, appear by Dennis E. Shay. There are no other appearances. The Court has jurisdiction.[3] The matter was taken under advisement following trial. The Court is ready to rule, and for the reasons stated below, denies the objection.

## NATURE OF THE OBJECTION

This is an action to determine the Trustee's objection to the Debtors' homestead exemption. On October 5, 2005, the Debtors acquired the homestead by an exchange of property with Thelma P. Agnew, the mother of Debtor Gerald L. Agnew. The exchange consisted of the Debtors' receipt of the homestead (a quarter section of agricultural land which includes a farmstead occupied by Debtors for 12 years) in exchange for Gerald's undivided 1/5 interest in certain nonexempt agricultural land and all of Debtors' farm equipment.

The Debtors filed for relief under Chapter 7 on October 10, 2005 and claimed the homestead property as exempt pursu-

---

1. This Memorandum and Order was originally entered on October 31, 2006. An error in former footnote 10 has been amended in this version.

2. This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101–1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr.P. (2004), unless otherwise specified.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. An objection to exemptions is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(B). There is no objection to venue or jurisdiction over the parties.

ant to K.S.A. 60–2301,[4] with a value of $88,000. The Trustee filed an objection to the Debtors' homestead exemption on November 18, 2005, asserting that the "transfer of the property is subject to review and scrutiny under 11 U.S.C. § 522(*o*)(4)." Subsection 522(*o*)(4) was enacted as part of BAPCPA and is one of the few sections of the act that is applicable to cases filed after April 20, 2005, but before October 17, 2005. Section 522(*o*)(4) is a limitation on exempt homestead interests to the extent of any value of the homestead attributable to fraudulent conversion of nonexempt assets within ten years before filing. It provides:

(*o*) For purposes of subsection (b)(3)(A) [establishing domicile requirements for debtor's exemptions under state law], and notwithstanding subsection (a) [definition of dependant], the value of the interest in—

*   *   *   *   *   *

(4) real or personal property that the debtor or a dependant of the debtor claims as a homestead;

shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in a 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion at the debtor could not exempt, under subsection (b), if on such date debtor had held the property so disposed of.

## FINDINGS OF FACT

Debtor Gerald Agnew (hereafter Debtor) was the only trial witness. About 12 years ago, Debtor retired from the military and returned to western Kansas to run a farming operation on family owned property. He and his wife took up residence at 2965 County Rd 6, Eskin, Kansas, legally described as the NE 1/4 of 10–11–42, Wallace County, Kansas, and continued to reside on the property as of the date of filing and time of trial. This is the quarter section which Debtors claim as their exempt homestead. It is mostly crop land and has one irrigation well, a farmstead, which is a two-story frame building, and various farm buildings. The residence was built in approximately 1927, was purchased by the Debtor's father in 1942, and is where Debtor Gerald Agnew grew up. Debtors did not own this property until five days before they filed for relief under Chapter 7. Before that date, Debtors leased the homestead property from Debtor's mother's trust and were not entitled to exempt the property as their homestead under Kansas law.[5]

Since he started farming in the mid 1990's, Debtor's farming operation was conducted on 1680 acres in Wallace County through Agnew Land and Cattle Company, Inc., a corporation owned by Debtor (70%) and his children (30%). Seven hundred twenty of those acres (described as all of 13–11–42 and W1/2 of SW 1/4 of 18–11–41, Wallace County), which is comprised of

---

4. Kansas is an opt-out state, so that Debtors' homestead exemption is determined by state law, subject to applicable Code limitations. K.S.A. 60–2301 provides: "A homestead to the extent of 160 acres of farming land ... occupied as a residence by the owner or by the family of the owner, or by both the owner and the family thereof, together with all improvements on the same, shall be exempted from forced sale under any process of law,

and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon."

5. *See* K.S.A. 60–2301, quoted above.

580 acres of grass land and 140 acres of crop land, had been deeded by Debtor's mother to Debtor and his four siblings in approximately 1990. Debtor leased the undivided 4/5 interests he did not own. Debtor also leased from his mother's trust the homestead property (160 acres) and an additional 800 acres. The rent was 1/3 of crops and pasture rent. Debtor owned the farm equipment used in the operation, having purchased it over the years.

When Debtor's farming operation was unprofitable because of drought, the bank providing the operating loan called the loan, which was paid in full. Debtor was unable to obtain replacement financing and for a period of time used credit cards to keep farming. Debtor then stopped this practice, ceased use of the credit cards, and stopped making payments. In the spring of 2005, Debtor contacted Farm Aid and was referred to Kansas Agricultural Mediation Service. That service referred him to an economist at Kansas State University and to Kansas Legal Services. Debtors' farm equipment, which was unencumbered, was valued by the economist at $48,155, based upon the purchase price, depreciation, and condition. Even with assistance, Debtor was unable to obtain an operating loan on terms he could manage. At a meeting in June with Kansas Legal Services, bankruptcy was suggested, but rejected by Debtor.

One borrower apparently obtained a judgment prepetition,[6] and others had undertaken collection efforts so that in the late summer Debtor was receiving calls from creditors eight to ten times a day. In September, 2005, Debtor met with bankruptcy counsel. Debtor's schedules show secured claims of $30,500, tax claims of $640, and credit card debt of approximately $111,000. Debtors' only real property is the homestead, and personal property is valued at $37,500. In addition to the homestead valued at $88,000, Debtors claim exemption of personal property valued at $5,550.[7] Debtor acquired the homestead property on October 5, 2005, in exchange for his undivided interest in the 720 acres of agricultural land and all his farm equipment. The Statement of Financial Affairs discloses the exchange. Debtor denied that the acquisition was motivated by his bankruptcy filing, which occurred five days later, stating that family issues motivated the exchange. The Court finds that the timing of the exchange must have been influenced by the contemplated bankruptcy, but accepts the Debtor's uncontradicted testimony as to the motivation for the exchange.

The circumstances of the exchange are the following. Debtor's mother is in her early 90's. For about three years before filing for bankruptcy, Debtor and his mother began discussing the desirability of Debtor's becoming the owner of the homestead property so that after his mother's death, Debtor's siblings would have no control over and no ability to force the sale of this property. Debtor did not have cash to purchase the property and wanted to be fair to his brothers and sisters. In the summer of 2005, Debtor and his mother met three or four times with his mother's long-time attorney, Allan L. Hurlburt. Debtor did not have his own counsel,[8] but when he met with bankruptcy counsel in

---

6. The unsecured proof of claim filed by Ford Motor Credit for $9,021.24 states a judgment was obtained on February 10, 2005.

7. Debtors' schedule of personal property includes a modest amount of unencumbered nonexempt property.

8. Debtor knew that the exchange could result in tax liability relating to the farm machinery but not the land, because the land was a like-kind exchange.

September, informed him that the exchange was in process. Mr. Hurlburt, based upon county assessed valuations for tax purposes, determined the homestead to have a value of $84,511 and Debtor's undivided 1/5 interest in the 720 acres to have a value of $36,356. The farm equipment had been valued by the Kansas State economist for $48,155, the difference between the values of the two pieces of real property. The exchange, whereby Debtor transferred his 1/5 interest in the 720 acres and all his interest in his farm equipment to his mother's trust in exchange for the homestead, was closed on October 5, 2005, with the assistance of Mr. Hurlburt. Debtor testified that there was no negotiation of values. There was no evidence presented that the values assigned were unreasonable.[9] The Court concludes that the fact that the value of the homestead exactly equaled the value of the equipment plus the undivided 1/5 interest in the 720 acres is credible.

In conjunction with the exchange, Debtor entered into a written equipment lease with his mother's trust to use the farm equipment for a term of three years for a rent of $500 per month and a three-year written farm lease for the trust's 800 acres and undivided interest in the 720 acres for 1/3 of the crops and appropriate rental for the pasture. The aggregate value of the rental payments under the new leases were approximately equal to the rent paid prior to the exchange, when Debtor owned the farm equipment and the undivided 1/5 interest, but rented the homestead and other property.

## ANALYSIS

■ This case concerns whether the Code limits Debtors' homestead exemption. The Code allows states to opt-out of the federal exemptions and to allow debtor's homestead exemption only as allowed by state law.[10] Kansas is such a state.[11] Debtors' homestead exemption thus originates in Kansas law, specifically K.S.A. 60–2301[12] which, as to agricultural land, grants a homestead in up to 160 acres occupied by the debtor as a residence, regardless of value. Until BAPCPA, there was no monetary limit on a bankruptcy homestead exemption claimed under Kansas law. However, BAPCPA added three new provisions to the Code, subsections 522(o), 522(p), and 522(q), which have the potential under certain circumstances the limit the value of the exempt homestead property. This case requires the Court to construe one of them, subsection 522(o). It excludes from the exemption the value of the debtor's interest in a homestead to the extent attributable to any property that the debtor could not otherwise exempt and had been disposed of within ten years before the filing of a petition with the intent to hinder, delay, or defraud a creditor.[13]

■ Prior to BAPCPA, it was well established that a debtor could engage in exemption planning, whereby assets which would be nonexempt could be converted to exempt assets prior to filing for bankruptcy protection. "An eleventh hour acquisition of exempt property will not require

---

9. The Court's knowledge of agricultural land and equipment values does not lead the Court to be suspicious of the valuations.

10. 11 U.S.C. § 522(b)(3)(A).

11. K.S.A. 60–2312.

12. See note 4, above.

13. See 4 *Collier on Bankruptcy* ¶ 522.08[5] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev.2006) (future citations to this authority shall be to volume and paragraph number only).

disallowance of an exemption."[14] The Code's limitation on abusive prepetition planning was found primarily in § 727(a)(2)(A), which allows for the denial of discharge if a debtor, with intent to hinder, delay, or defraud a creditor, has diminished the estate within one year of filing. However, denial of discharge requires actual intent to defraud creditors, and in this circuit the desire to convert assets into exempt property by itself does not constitute actual intent to defraud.[15] Prefiling planning to enhance exemptions was encouraged by the legislative history of the Code which declared:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.[16]

Section 548(a)(1)(A), allowing the trustee to avoid a transfer made within one year of filing with "actual intent to hinder, delay, or defraud any entity" to which the debtor was indebted, likewise placed a limitation upon prepetition planning that was fraudulent rather than a simply taking advantage of the exemptions to which debtors are entitled.

■ In this case, the Trustee asserts that the enactment of 522(o) has materially changed the permissible practice of prebankruptcy planning as it relates to the conversion of nonexempt assets into a homestead. He asserts that 522(o) must have been enacted for a purpose, that the purpose included diminishing the extent of permitted augmentation of the homestead, and that the standard of intent to hinder, delay, or defraud creditors is satisfied by the facts of this case. Because the property exchanged for the homestead, with the exception of $15,000 of the farm equipment,[17] was nonexempt, Trustee asserts that the homestead exemption should be reduced to $15,000. Debtors, on the other hand urge that 522(o) incorporates the actual fraud standard applied under § 727(a)(2)(A), and the Trustee has not fulfilled his burden of proof to establish intent to hinder, delay, or defraud creditors.

■ The Court agrees with Debtors' position that the Trustee has the burden to establish actual intent to defraud. First, there is nothing in the limited legislative history of BAPCPA to suggest that Congress intended to change the longstanding policy of permitting intentional but nonfraudulent conversion of nonexempt property to exempt property on the eve of filing. It expressly made the limitation in 522(o) applicable only to the extent of value attributable to actions intended to hinder, delay, or defraud. A leading commentator states, "Section 522 continues to adopt the position favorably viewed by the Code drafters that the mere conversion of nonexempt property into exempt property, without fraudulent intent, does not deprive

---

14. *4 Collier on Bankruptcy* ¶ 522.08[4].

15. *Marine Midland Business Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir.1991).

16. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 361 (1977).

17. K.S.A. 60–2304(e) allows a person to exempt tools regularly and reasonably necessary in carrying on the person's business or occupation, not to exceed an aggregate value of $7,500. There was evidence that both Debtors engaged in the farming operation, such that in their joint case $15,000 of farm equipment would have been exempt.

the debtor of exemption rights in the converted property." [18]

■■■ Second, the Court finds that the phrase "intent to hinder, delay, or defraud a creditor" in 522(o) should be construed the same as the identical phrase in 727(a)(2)(A). The Code does not define the phrase "intent to delay, hinder, or defraud a creditor." Congress' used the identical phrase as is in 727(a)(2)(A) in the new subsection which addresses matters also within the scope of 722(a)(2)(A). Therefore, the case law interpreting the phrase "intent to hinder, delay, or defraud a creditor" in 727(a)(2)(A) and 548(a)(1), which requires actual intent to defraud, "provides instructive guidance" [19] when construing the same phrase in 522(o). The only two reported decisions addressing 522(o) have applied the meaning of intent to hinder, delay, or defraud from cases construing 722(a)(2)(A) and 548(a)(1).[20] One states:

> The statutory language is similar, if not identical to language contained both in fraudulent conveyance provisions of the Bankruptcy Code as well as denial of discharge. Section 548 provides that a trustee may avoid a pre-petition transfer of assets of the debtor if the debtor made the transfer "with actual intent to hinder, delay, or defraud" any past or future creditor. Section 727(a)(2) bars a discharge for such conduct. Each of those statutory sections has a developed body of case law construing its meaning. It is only logical to assume that Congress intended that by using essentially

the same phrase in § 522(o), cases construing the fraudulent conveyance and discharge provisions also would apply to add body to the bare words of this new Congressional language.[21]

Third, this construction of 522(o) does not render the enactment useless. Rather, even when the phrase intent to hinder, delay, or defraud a creditor is given the same meaning as the phrase in 727(a)(2)(A) and 548(a)(1), 522(o) imposes new limitations upon the homestead exemption. First, the new provision expands the look back period to ten years. Only transfers within one year are vulnerable under 548 or 727. Second, it provides a creditor a specific procedure for a narrow attack on the extent of the homestead in place of a broad objection to discharge. In addition, although only the trustee may recover a fraudulent conveyance under 548, a creditor, as well as the trustee, may object to the homestead exemption under 522(o).

■■■ The Court therefore examines the meaning of "intent to hinder, delay, or defraud a creditor" in case law under 722(a)(2)(A). When ordering denial of discharge based upon the pre-petition conversion of assets, the Court must find *actual* intent to defraud creditors.[22] The burden is upon the objecting party to establish fraud by a preponderance of the evidence.[23] Fraudulent intent can seldom be proven by direct testimony and is generally established by inference from specific

18.  4 *Collier on Bankruptcy* ¶ 522.08[5].

19.  *In re Lacounte,* 342 B.R. 809, 814 (Bkrtcy. D.Mont.2005).

20.  *Id.; In re Maronde,* 332 B.R. 593, 599 (Bkrtcy.D.Minn.2005).

21.  *In re Maronde,* 332 B.R. at 599.

22.  *In re Carey,* 938 F.2d at 1077.

23.  Fed. R. Bankr.P. 4003(c) (objecting party has the burden to show that exemptions are not properly claimed); *see First Nat'l Bank of Gordon v. Serafini (In re Serafini),* 938 F.2d 1156 (10th Cir.1991)(preponderance of the evidence standard applies to denial of discharge under 727(a)(2)(A)).

indicia of fraud.[24] The cases are very fact specific, and the activity in each situation must be viewed individually. Substantial evidence of prebankruptcy planning to pay down a mortgage on a homestead using nonexempt assets is not sufficient deny discharge, as actions to hinder, delay, or defraud creditors require something more.[25] In the Tenth Circuit that something can be evidenced by the following situations and actions as a basis to infer fraudulent intent: Debtor conceals prebankruptcy conversions; debtor converts assets immediately before filing; debtor continues to use the transferred property; the transfer is made to family members; debtor obtained credit in order to purchase exempt property; the conversion occurred after the entry of a large judgment against the debtor; debtor had engaged in a pattern of sharp dealing prior to bankruptcy; and the conversion rendered the debtor insolvent.[26] However, the Tenth Circuit has also cautioned that the "mere fact that a transaction occurred soon before the filing of bankruptcy does not necessarily support the inference of fraud," [27] as the circumstances of the transaction must be examined. A legitimate purpose for a transfer supports the finding of no fraudulent intent.[28]

■■■ Section 548(a)(1)(A) requires actual intent to hinder, delay, or defraud a creditor as a basis to set aside a transfer. The circumstantial evidence establishing the badges of fraud under this subsection are similar to those discussed above from cases under 727(a)(2)(A). The following are identified by the Tenth Circuit BAP:

Relevant factors include whether the transfer was to an insider; whether the debtor retained possession or control of the property after the transfer; concealment of the transfers; pending or threatened litigation against the debtor at the time of the transfer; a transfer of substantially all of the debtor's assets; absconding by the debtor; removal or concealment of assets; reasonably equivalent value in exchange for the transfer; debtor's insolvency at the time of the transfer; the proximity in time of the transfer to the incurrence of a substantial debt; and a transfer of substantial business assets to a lienor followed by a subsequent transfer of such assets to it insider of the debtor. Transfers to family members are subject to particularly close scrutiny. The relationship of the parties in conjunction with other circumstances often provides compelling evidence of fraud.[29]

■■■ The Court finds under the evidence presented the Trustee has not sustained his burden to prove that Debtors acquired the homestead with intent to hinder, delay or defraud creditors. As stated above, fraudulent intent may not be inferred solely from conversion of nonexempt assets (the Debtor's undivided 1/5 interest in the 720 acre tract and the farm equipment having value in excess of $15,000) for the exempt homestead five days before filing for relief under Chapter 7. Fraud could be inferred from the facts that the transaction was with the Debtor's mother's trust, after the exchange Debtor

---

24. *See In re Carey,* 938 F.2d at 1077.

25. *Id.*

26. *Id.* at 1077 and at 1077 n. 4.

27. *Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1293 (10th Cir.1997).

28. *Mcorp Management Solutions, Inc. v. Thurman (In re Thurman),* 901 F.2d 839, 842 (10th Cir.1990).

29. *Zubrod v. Kelsey (In re Kelsey),* 270 B.R. 776, 782 (10th Cir.BAP2001) (citations omitted).

continued to use the transferred property, and a judgment was entered against the Debtor before the exchange.

However, any inference of fraud from these factors is de minimis in light of other factors negating fraud. Of primary importance is that fact that the exchange fulfilled a legitimate estate planning purpose which Debtor had discussed with his mother long before bankruptcy was a possibility; it fulfilled a purpose other than bankruptcy planning. Although the timing appears to have been influenced by the Debtors' decision to file under Chapter 7, the substance of the transaction was not influenced by the anticipated filing. A portion of the property exchanged would have been exempt if retained by Debtors. If Debtors' intent had been to hinder creditors, they could have developed a scheme to retain the exempt portion of the farm equipment. In addition, there is no evidence that the assets had values other than those assigned by the parties to the exchange. The exchange was financially neutral; Debtors' net worth did not change. After the exchange, the leases changed, but the rent paid by Debtors remained essentially the same. Debtor now leases the entire 720 acres and the equipment for about the same rent as he previously paid for the homestead and the 4/5 interest in the 720 acres. No money was borrowed to accomplish the transaction. The exchange was not hidden; it was disclosed in the bankruptcy schedules, was documented by the attorney for Debtor's mother; and the land transfer is in the public records. Debtor used all of the property before the exchange, having lived in the homestead and rented the farm property which he did not own for the past twelve years. The prepetition judgment

was for a small amount, and no execution had been attempted.

This case is clearly distinguishable from *In re Lacounte*,[30] where the court sustained the Chapter 13 Trustee's objection under 522(*o*) to the debtors' homestead exemption. Without the knowledge of her husband, because of credit card debt incurred to cover the wife's gambling losses, the debtors became insolvent. The wife's daughter consulted with a bankruptcy attorney who advised the sale of nonexempt assets and application of the proceeds to the home mortgage. In accord with this advice, only months before filing, debtors sold numerous items of nonexempt property for $42,800 and applied $42,500 of the proceeds to reduce the principal balance owed on their home mortgage. The sales were made primarily to family members. One of the debtors was evasive in her testimony regarding the reasons for the actions, and the other admitted that he was angry about his financial situation and "could not justify giving up assets that he had worked so hard for when he could simply sell the assets and apply the proceeds to his home mortgage."[31] The court construed this testimony as an admission that the transfers were undertaken with intent to put the equity in the property sold out of the reach of creditors, thereby satisfying the trustee's burden to show intent to hinder, delay or defraud a creditor. In this case, in contrast, the Debtor's testimony was not evasive and established that the exchange fulfilled an estate planning goal of his mother. Debtor denied that it was undertaken to keep nonexempt assets from creditors, and the circumstantial evidence is fully consistent with the testimony.

Likewise, the facts in this case are clearly distinguishable from those which evi-

---

**30.** *In re Lacounte*, 342 B.R. at 809.

**31.** *Id.*, 342 B.R. at 816.

denced intent the hinder, delay, or defraud in *In re Maronde*,[32] the second reported case disallowing the homestead exemption in part under 522(*o*). When debtor encountered financial difficulty he had a balance of approximately $50,000 on an equity line of credit secured by a second mortgage on his home. After talking with a friend about debt restructuring, he obtained new unsecured credit card debt and in one month applied $31,5000 through balance transfers to pay down the equity line. He attempted 6 additional transfers, but they were reversed by the credit card companies. Debtor then sold a truck and trailer which were only partially exempt and applied the proceeds to the equity line, reducing the debt to zero on the eve of filing bankruptcy. The court concluded that debtor's "conversion was part and parcel of an overall scheme to defraud his creditors which he hatched at the time while insolvent."[33] It identified his original scheme as a plan to pay down the second mortgage entirely with credit card advances. When that scheme failed in part, debtor turned to plan B which required the liquidation of the truck and trailer. The evidence was labeled as "more than enough"[34] to find intent to hinder, delay, or defraud. The facts in this case are materially different. Debtor did not obtain loans to pay down debt impairing an exemption. He acted with his mother to accomplish an estate plan which had been discussed for several years.

For the foregoing reason, the Court denies the Trustee's objection under 522(*o*). Debtors may exempt their entire interest in the homestead. Debtors did not act with intent to hinder, delay, or defraud a creditor when acquiring the homestead, and no portion of the homestead value is attributable to fraudulent conversion of nonexempt assets within ten years before filing.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

---

**32.** *In re Maronde,* 332 B.R. at 593.

**33.** *Id.,* 332 B.R. at 600.

